CHRISTOPHER I. MAINE, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Abortion — Dying declarations — admissibility of under chap. 352 of 1875 — statements to contradict — Declarations against interest — Accomplice — credit due to.*

Where the dying declarations of a person deceased are offered in evidence upon the trial of an action, it is the duty of the court to decide whether or not, upon the facts proved, such declarations are admissible, and its decision upon this question is a matter of law and subject to review upon appeal.

To entitle such statements to be received in evidence, the person making them must have lost all hope of recovery, and have been under the apprehension of near approaching death.

It is no objection to such testimony that it was given in answer to leading questions, or obtained upon pressing and earnest solicitation.

The deceased died from the effect of an operation, alleged to have been performed by the plaintiff in order to produce a miscarriage. In her dying declaration she stated "Dr. Maine (the plaintiff in error) operated on me." *Held,* that this was not the expression of an opinion, but the statement of a fact peculiarly within her knowledge.

The counsel for the defense offered to show by the physician who attended the deceased when she was delivered, which occurred two or three days prior to her death, that she had then stated that her husband had been trying to deliver her and had failed, in order to show the effect this might have had. *Held,* that the evidence was inadmissible, because (1) it was no part of the *res gestæ,* but a narrative of a past transaction; (2) it was hearsay; (3) her declarations not *in extremis,* were not admissible to contradict statements then made by her.

The plaintiff in error was examined as a witness in his own behalf. *Held,* that it was proper to show on his cross-examination that he had committed other offenses of the kind for which he was then tried.

Upon the trial it was offered to show what the deceased had said after she had left the private room in which the operation was performed. *Held,* that this was not a part of the *res gestæ,* but merely a narrative of a past transaction, and was therefore inadmissible.

Declarations made by her, tending to show that the plaintiff in error was innocent and she alone responsible, were offered in evidence under the rule that declarations against the interest of the party making them are admissible against him. *Held,* that this rule did not apply to such cases; that the interest with which the declarations are at variance must be of a pecuniary nature.

*Shaw* v. *People* (3 Hun, 272) distinguished.

The credit to be given to the testimony of an accomplice is wholly a question for the jury, though judges, in their discretion, may advise the jury not to convict upon the uncorroborated testimony of an accomplice.

WRIT of error to the Court of Sessions of Tioga county, to review the conviction and sentence of the plaintiff in error for procuring an abortion.

The plaintiff in error, Christopher I. Maine, was jointly indicted with one Rockwell Head, at the December Court of Sessions, in Tioga county, in 1875, for procuring an abortion upon one Florence Head, the wife of Rockwell Head, which, it is alleged, was done on the 16th day of March, 1875, at the town of Spencer, in the county of Tioga, from the effects of which it is claimed Florence Head died on the 22d of March, 1875.

The evidence on the part of The People shows that on Tuesday, the 16th day of March, 1875, Rockwell Head and Florence Head, his wife, went from Wilseyville to Spencer, where Dr. Maine, the plaintiff in error, then resided, and that Dr. Maine there, in the presence of Rockwell Head, her husband, performed an operation upon Florence Head which resulted in the premature birth of a child, with which she was pregnant, on Friday, the 19th day of March, 1875. That she was attended by Dr. Miller, of Candor, who was present at the time of the delivery of the child. On Monday, the 22d day of March, she died, and on that day her dying declaration was taken by one Barlow Sanford, which declarations were used as evidence by The People upon the trial.

Dr. Miller, upon the trial, was asked what deceased stated to him on the morning of the day of her death, as to the cause of her then condition, and answered that "she said she would tell me, and tell the truth, and went on to state that Dr. Maine, she said, operated on her with an instrument." This was objected to as being the expression of an opinion and not of a fact, and the objection overruled.

Evidence was also offered in behalf of the defendant to show that when Dr. Miller was first called, Mrs. Head stated to him that her husband had been trying to deliver her and had failed, with a view of showing what effect this might have had upon her.

*William H. Warren*, for the plaintiff in error.

*Lyman Settle*, for the defendants in error.

BOARDMAN, J.:

The dying declarations of Mrs. Head were received under chapter 352 of the Laws of 1875. While conceding that such declarations are admissible under this law, the plaintiff in error insists the preliminary proof did not show that the deceased, at the time, was laboring under a settled conviction that she had got to die, or had given up all hopes of recovery. The alleged injury was done on the 16th of March, 1875, and the death ensued on the twenty-second of March. Dr. Miller first saw her on the nineteenth, and gave her encouragement that she might live. This was on Friday. On Saturday the doctor had some hopes that she would get well. She wanted to get well, but was troubled about it, and was afraid she would not get well. On Saturday, the twenty-first, she was sinking and growing worse. The doctor told her, her prospects were not very good but he hoped still she might get well. She thought she could not get well, but wanted the doctor to save her if he could. On Monday, the twenty-second, the doctor gave her no encouragement. The deceased then said she thought she could not get well. She added, " doctor, I hope you can save me, but I don't believe you can." The deceased had been gradually sinking away, and growing worse from the nineteenth. On Sunday, the twenty-first, the doctor had no hope or expectation of her recovery. On Monday, the twenty-second, she was dying without the possibility of recovery. The doctor knew this and gave her no assurance of hope. The friends about her were informed of her condition. She herself had the utmost assurance of her approaching death, and did not believe she could be saved. Upon this evidence the court admitted the statement made by Mrs. Head on the twenty-second, as dying declarations. It was the duty of the court to determine whether, upon the facts proved, the statement of the deceased was competent evidence. Its decision upon that question is matter of law, and may be reviewed. (1 Whart. Cr. Law, § 681 ; 1 Greenl. Ev., § 160 ; *Donnelly* v. *State*, 2 Dutch. [N. J.], 463, 601.)

I think the decision was correct, and that the evidence abundantly justified the admission of the testimony. It cannot be necessary to review the many cases cited by counsel or contained in the text-books on this subject. All substantially require one condition. The person making the statement must have lost all hope of recov-

ery, must have believed that she was about to die. It must have been made under the apprehension of near approaching death. This condition existed in this case. Mrs. Head was *in extremis* on that Monday and died that day. The doctor knew it and told the friends. The fact of her physical condition is beyond controversy. It was such as is required for the admission of her declarations, if she either knew the truth or realized her actual situation. She knew she was very sick on the nineteenth, and that she had been sinking and growing worse day by day. When the doctor, day by day, spoke words of encouragement, she did not believe him, but while hoping to get well, she did not expect it.` On this Monday the doctor gave her no hope and she had none. She expected to die. She did not believe the doctor could save her. Her expectations were justified by the event. I do not think the court could, upon the facts, have believed that she hoped to survive.

The evidence was therefore competent, and being admitted was entitled to the consideration of the jury, as it should appear to be worthy of confidence.

It was further objected to this evidence that her husband improperly interfered upon the examination, by answering questions put to the wife. It is no cause for objection to the admissibility of such testimony, that it was given in answer to leading questions or obtained upon pressing and earnest solicitation. (1 Greenl. Ev., § 159.) The evidence may be given by signs (*Commonwealth* v. *Casey*, 11 Cush., 417), or through an interpreter. The manner in which the evidence was given and the circumstances surrounding the person giving it, are proper to be considered by the jury in estimating its value. But in this case the written statement was read over to the deceased, and by her signed and sworn to. This would go far to obviate any alleged misconduct of the husband during the preliminary part of the examination.

It is objected that that portion of the statement of the deceased, viz., "Dr. Maine operated on me," was the expression of an opinion, and therefore not admissible under the well known rule as laid down in 1 Greenleaf's Evidence, section 159 ; 1 Wharton's Criminal Law, section 678. But such claim is not tenable. In *Wroe* v. *State* (20 Ohio St., 461, 469), the declaration of deceased stated, "it, the wound, was done without any provocation on his

part," and it was held not an opinion; that whether there was provocation or not was a fact not stated in the most elemental form of which it was susceptible, but sufficiently so to be admissible in evidence. (*Rex* v. *Scaife*, 1 Mood. & Rob., 551.) The question whether a person was intoxicated is proper. (*People* v. *Eastwood*, 14 N. Y., 562.) Opinions may be given of identity of a person or handwriting. Any dying declaration of deceased which she, if living, would be permitted to testify to, is competent evidence. The fact whether an operation had been performed upon her by Dr. Maine, was peculiarly within her knowledge. It was a fact, not an opinion. "On any subject, to which a witness may testify, if he has any recollection at all of the fact, he may express it as it lies in his memory." (1 Greenl. Ev., § 440.)

The evidence asked for of Dr. Miller was properly excluded. Mrs. Head's declarations relating to a past transaction were not competent, and the fact attempted to be proved was immaterial. Besides, it was not absolutely excluded, and was subsequently proved by the doctor, so far as he knew any thing on the subject.

The proof offered of declarations of Mrs. Head to Dr. Miller, was inadmissible for several reasons. 1. It was no part of *res gestæ*, but a narrative of a past transaction. 2. It was hearsay evidence. 3. Her declarations not *in extremis* are not admissible by way of contradiction, as will be more fully shown hereafter.

The evidence of Mrs. Head's condition on the evening of the sixteenth of March after the operation, and her declarations in connection therewith, were proper. (*Caldwell* v. *Murphy*, 11 N. Y., 416; *Werely* v. *Persons*, 28 id., 344; *Brown* v. *N. Y. Cent. R. R. Co.*, 32 id., 603; *Matteson* v. *N. Y. Central R. R. Co.*, 35 id., 493.) They were declarations accompanying acts, characterizing the act and her bodily suffering, and the opinion given by her husband was upon facts stated. The opinion is of the same class with those stating that a person is drunk, founded upon his appearance and conduct. (*People* v. *Eastwood*, 14 N. Y., 562.)

Upon the cross-examination of the plaintiff in error, many questions were asked him with the object of showing that he had committed other offenses of the kind here charged against him. Exception was taken to the ruling of the court allowing such questions to be asked.

The plaintiff in error had offered himself as a witness in his own behalf. On cross-examination the line of inquiry pursued by the prosecution was proper to affect his credit as a witness. Such cross-examination is much in the discretion of the court. The plaintiff in error was repeatedly advised by the court that he need not answer questions tending to establish a crime on his part, or that would disgrace him. He availed himself of that privilege, and the result was that no other offenses against him were proved upon this trial. I think the rulings of the court in that respect were correct, but if otherwise, nothing was proved against the plaintiff in error under the questions objected to. (*Brandon* v. *The People*, 42 N. Y., 265; *Great Western Turnpike* v. *Loomis*, 32 id., 127; *La Beau* v. *The People*, 34 id., 223.)

At various times during the progress of the trial the plaintiff in error offered to prove the declarations of the deceased, not *in extremis*, by way of contradiction of her dying declarations. Such evidence was rejected and exceptions taken. These exceptions apply more particularly to the witnesses Harriet Brown, Nancy Howell, Chastina Sandford and Dr. Miller. The theory upon which such evidence was claimed to be proper was this: The deceased gave her dying declarations in the absence of the plaintiff in error, and he therefore had no opportunity to cross-examine her, and so lay the foundation for such contradictions. As a consequence it is claimed that he should have the same right to establish these contradictory facts as though she had been examined in relation thereto. Such, however, is not the law. The general rule requires an examination of every witness as to any contradictory or inconsistent statements made by him, before the same may be proved against him by way of impeachment of his evidence. (*Stacy* v. *Graham*, 14 N. Y., 492.) In the opinion of the learned judge in that case, many instances are suggested where the rule seems to be harsh. But the principle upon which the rule is founded is, that both party and witness have a right to the explanation which the latter may give of the statements imputed to him. The case under consideration is not an exception to this general rule as is expressly decided in *Wroe* v. *State* (20 Ohio St., 460); *Runyon* v. *Price* (15 id., 1), sustains the same view, and reviews the history of the law upon this subject. (See, also, 1 Greenl. Ev., § 126.)

The declarations to which I have thus referred are narratives of past transactions, and come therefore within the rule applicable to hearsay evidence. An exception is attempted to be made in the case of Mrs. Harriet Brown, a daughter of the plaintiff in error, by whom it is attempted to be proved what the deceased said, after she had left the private rooms of the plaintiff in error, where the operation was performed, as to what the plaintiff in error had done in such room. It is quite plainly not a part of *res gestæ*. It is not a declaration accompanying an act. It is merely a narrative of a past transaction, and as such is inadmissible in evidence. (*People v. Davis*, 56 N. Y., 95.)

The declarations of the deceased tending to show that the plaintiff in error was innocent of the crime charged against him, and that she alone was responsible for her situation, are also urged as competent under the rule that declarations against the interest of the party making them are admisible in evidence to charge the party.

This principle has no application to the facts offered to be proved. The interest with which the declarations are at variance must be of a pecuniary nature. (1 Gr. Ev., § 147, note 1 ; *Davis v. Loyd*, 1 C. & K., 276.)

The case of *Shaw* v. *The People* (3 Hun, 272) may readily be distinguished from the case at bar. There the declarations excluded were evidence of a present intent ; they illustrated the state of mind of the deceased and her then purpose. A jury might infer, on proof of the fact accomplished, that it was done in pursuance of such expressed purpose ; but even then it is and must be a most dangerous species of evidence, with which criminal justice may be thwarted. There is no possibility of explanation or intelligent cross-examination. The person who utters the words is dead ; any one can manufacture the evidence without fear of detection ; the people prosecute, and all that the dead person may have said without the sanction of an oath, without fear of punishment or of death, and all that wickedness or crime may attribute to him must stand in the way of conviction. But in the present case the declarations were not expressive of any present purpose or intent on the part of deceased. They were just such narratives of a past criminal transaction, to which she was a party, as you would expect her to misrepresent and falsify, not only for her own protection but

also for the protection of her accomplice. In the nature of the case and from the circumstances conceded to exist, you could not hope for the truth from her until the perils of death surrounded her.

I find, also, that in a number of instances the plaintiff in error was allowed to prove, and did prove facts, the evidence of which was, at an earlier stage of the case, rejected under his exceptions. Yet those exceptions are still urged upon this court as errors.

Mrs. Howell had testified to declarations of the deceased made to her, inconsistent with the guilt of the plaintiff in error. She was asked if she had not charged the plaintiff in error with being guilty of the offense charged. She denied it (folio 764). The evidence proved at folio 844 was proper by way of contradiction, and as tending to show she was not entitled to credit in what she had sworn to about the admissions of the deceased.

The court properly restricted the cross-examination of Barlow Sandford to the matters testified to on his direct-examination; both parties had rested before Sandford had been recalled. The cross-examination was an attempt to reopen the defense; for that reason the court rejected the evidence. It was a matter of discretion, which will not be reviewed in this court.

There was no error in the charge or in the refusal to charge, folios 990, 998. The charge in the respect objected to was remarkably favorable to the plaintiff in error. The refusal to charge that " an accomplice is not entitled to credit as a witness, except so far as he has been corroborated by credible witnesses," was correct. Judges, in their discretion, will advise a jury not to convict upon the uncorroborated testimony of an accomplice. How far he is entitled to credit as a witness is wholly a question for the jury. (1 Gr. Ev., § 380; The People v. Costello, 1 Den., 83; and cases cited in 6 Abb. Dig., 230, § 635.) The proposition the court was asked to charge was too broad, and was properly refused.

The result of a somewhat laborious examination of this bill of exceptions is a concurrence in the rulings, decisions and charge brought up for review. I do not think any error was committed to the prejudice of the plaintiff in error, nor do I think he has failed in any respect of a just and fair trial. It would be strange indeed, if in a thousand folios of testimony and nearly one hundred

exceptions there were not some subjects for grave and attentive consideration.

Judgment and conviction affirmed.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment and conviction affirmed.